Dulany, *et al. vs.* Middleton, *et al.,* Ex'rs, &c.

---

ELEANOR A. DULANY, and others *vs.* JOHN I. MIDDLE-TON, and others, Executors and Trustees.

*Will—Bequest for Charitable purposes—General residue—Vested remainder—Gift or Devise, not Contingent—Trusts—Perpetuities.*

.A bequest by a testator to his two daughters, and a grand-daughter, of a certain sum " to be applied by them, in their best judgment, as my bequest for charitable and religious purposes, say for the promotion of the Christian religion, without prejudice or regard to sect, and for or towards the relief of the poor and destitute," is void as being too vague and indefinite to be executed.

A testator by his will directed that a certain sum should be set apart and invested for the payment of three annuities, and upon the death of each of the annuitants, so much of the principal as was necessary to produce the annuity of the deceased annuitant should revert, with the future products thereof, to be divided into three equal parts, subject however to certain payments to be made from said principal sum, like the residue of the estate. HELD :

That the annuitants having died in the life-time of the testator, the fund designed to raise the annuities fell into the general residue, to be divided in the manner prescribed for the division of the general residue of the estate.

A devise and bequest to each of the testator's daughters, and grand-daughters, (children of a deceased daughter,) to be held in trust to her separate use, for the term of her natural life, and after her death, to the use of her children, their heirs, executors and administrators, is of a present equitable interest, there being children in *esse* at the death of the testator,—that of the children of the devisee and legatee for life, while postponed in enjoyment, being a vested interest, but liable to be divested *pro tanto* to let in children born in the interval between the death of the testator and that of the devisee and legatee for life.

The contingency provided for in the event of the death of the devisee and legatee for life, without leaving issue, and the limitation over of the property thereon, does not render the gift or devise to the children of such devisee or legatee contingent, and does not postpone the vesting of the interest devised.

A testator devised and bequeathed in trust for his two daughters living, each one-third of his estate, less certain expenses and legacies, and the remaining third in trust for his three grand-daughters, children of a deceased daughter, collectively, for the term of their natural lives; said trusts to "cease and determine after the deaths of my two daughters, * * * during whose lives I wish them to continue. Upon the event of my grand-children, respectively, arriving at the age of thirty, so far as regards such grand-children and their respective shares,—that is to say, they shall cease and determine in the case of each grand-child, upon and as she reaches the age of thirty * * * and that such grand-children or grand-child, from that period and age, shall hold their respective shares, or her or his share, free and discharged of the said trust to themselves, for the term of their natural lives respectively, and after their deaths to the lawful issue of their bodies, their heirs and assigns, forever." The testator throughout his will referred to the children of his deceased daughter, as his "grand-children" or "grand-daughters," but not so as to the children of his living daughters; also, the shares given to the two living daughters were for life, and after their death to their children, their heirs, &c. HELD :

That the limitations in respect to the duration of the trust, and the vesting of the legal estate dependent upon the termination

of the trust estates, applied only to the children of the deceased daughter of the testator, and did not offend against the rule in restraint of perpetuities.

The trusts which it was declared should cease and determine after the deaths of the two living daughters, must be taken to mean the trusts of the two separate parts of the estate allotted to them, and which should cease upon the death of each daughter, respectively, as to her particular part, and to which her children would then become entitled in possession.

The termination of the trust, as to the shares of the grand-children of the deceased daughter was in no manner dependent upon the lives of the two daughters living, but took place as each grand-child reached the age of thirty.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the Court below, passed by Judge DENNIS.   The case will be found sufficiently stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, BRYAN, and MCSHERRY, J.

*Archibald H. Taylor*, for the appellants.

*Arthur W. Machen*, for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed for the purpose of obtaining a judicial construction of the will of Lambert Gittings, deceased, who died in July, 1887.   The will bears date the 30th of June, 1870.

At the date of the will, as also at the time of the death of the testator, the heirs-at-law and next of kin of the testator consisted of two surviving married daughters, Mrs. Middleton and Mrs. Buchanan, and three granddaughters, the children of Mrs. Simons, deceased, the eldest daughter of the testator.   Both the married daugh-

ters had children living at the date of the will and at the time of the death of the testator; and the three children of Mrs. Simons, namely, Eleanor A., Louisa and Fanny Simons, were all minors at the date of the will, but were married and had children at the time of the death of the testator; and the two daughters with their husbands and children, and the three granddaughters with their husbands and children, are all made parties defendants to the bill.

The *testator* was possessed of a large estate, consisting of both real and personal property; and this estate he devised and bequeathed to three named persons, his sons-in-law, and the survivors or survivor of them, their heirs and assigns forever, (giving special directions for supplying the place of either of the trustees named in case of his declining to accept the trust,) *to hold the property to the uses and upon the trusts expressed in the will.* The same three persons are named as executors as well as trustees. They are directed to pay debts, and funeral and cemetery expenses, etc.; and also to pay certain legacies. They are then directed to divide into three equal parts, the wines, furniture and pictures, and allot the parts to the daughters and granddaughters respectively, the one part being given to the three granddaughters collectively. They are also directed to pay over to his daughters, Mrs. Middleton and Mrs. Buchanan, and his eldest granddaughter, Eleanor A. Simons, the sum of $5,000, "to be applied by them in their best judgment, as my bequest for charitable and religious purposes, say for the promotion of the Christian religion, without prejudice or regard to sect, and for or towards the relief of the poor and destitute." They are next directed to set apart and safely invest, in their names as trustees, or retain invested from present investments, the sum of $10,000, or so much thereof as may be necessary, &c., and from the interest or dividends thereof, to pay to his,

the testator's, sister, Harriet Gittings, during her life, an annuity of $100; and to his sister Louisa E. Littig, during her life, an annuity of $200; and to his brother-in-law, Richard Croxall, during his life, (or to his daughter, Eleanor A. Jamieson, for his support,) an annuity of $300; each of which annuities to cease on the death of the annuitants respectively; and upon the death of each of said annuitants, so much of the principal sum of $10,000, as shall have been necessary to produce the annuity of the deceased annuitant, shall revert and go back, with the future products thereof, to be divided into three equal parts, the one-third to his three grandchildren, the children of Mrs. Simons, deceased, to be equally subdivided between them, and to their issue; one-third to his daughter Mrs. Middleton, and her issue, and the other third to his daughter Mrs. Buchanan, and her issue; to be held in trust for their benefit in the same manner as his other property therein after devised to them, or for their benefit; subject, however, to certain payments to be made from the principal sum of $10,000. The testator then directs that the trustees shall hold in trust the whole residue of his estate and property, together with the reversion of the sum before mentioned, after the annuities provided for, and that they shall divide the whole of such estate devised in trust, *into three equal parts,* having reference to the value of each part.    He then makes provision for the allotment of such three parts among his children and grandchildren, giving the first choice of parts to the grandchildren, as representing their deceased mother, Mrs. Simons; the second choice to Mrs. Middleton, and Mrs. Buchanan to take the remaining third part; and in case of either of the daughters, or the grandchildren, failing to make choice, the trustees, if necessary, to choose for her or them, as the case may be.    The testator then proceeds to declare the nature of the trusts, and the limitations

of the estate and interests of the children and grand-children in the property devised and bequeathed to them; and he does so in these terms: "And upon such choice being made, it is my will that my said trustees, their survivors, &c., *shall hold each part,* (being in the cases of my two daughters, Harriet and Henrietta, each one-third, and that of my three Simons' grandchildren collectively or together, one-third, and sub-divided one-ninth part to each of the latter,) to the separate use and benefit of my aforesaid two daughters and grand-daughters respectively, according to the parts chosen by them, as the same shall be allotted in the above or before mentioned division, free from any control of any present or future husbands, *for the term of their natural lives,* the annual product or avails thereof to go and inure to my aforesaid daughters, and granddaughters Simons, respectively; and after each of their deaths respectively, *the share of each to be held by my trustees as aforesaid to the use of the children of my aforesaid daughters and granddaughters, and their heirs, executors and administrators.*" He then provides for the event of the death of either of his two surviving daughters, and also of either of his three grandchildren, *without leaving issue,* with cross executory limitations; "or again," in the language of the will, "in the case of my grandchildren Simons, if they should all die before reaching the age of thirty, without leaving issue, upon the death of the last survivor, their father, if without receipt of pay as an officer, or retired officer of the army, shall be entitled to the receipt and enjoyment of one-half of the income during his life, and the residue or whole, as the case may be, with the principal, shall go equally to their aforesaid two aunts Mrs. Middleton and Mrs. Buchanan, and their issue," &c. The event of death has not occurred with either of the devisees and legatees, and therefore there is no question presented

here upon these cross executory limitations, and, of course, we are not to be understood as deciding any question involved in them that may affect parties who may ultimately claim thereunder.

These limitations of the interests of the *cestuis que trust* are followed by restrictions upon the power of alienation, lien or incumbrance of the property, with a qualified right to authorize the transfer and reinvestment of the property by the trustees, with a view to a more safe and beneficial investment thereof, during the continuance of the trusts.

Then follows the last clause of the will, the terms of which seem to have given rise to what is regarded as a serious difficulty in its construction, and as to the effect of that clause upon the devises and limitations contained in other clauses of the instrument. The last clause is as follows:

"And it is further my will and desire, that the trusts raised and expressed in this my last will and testament shall cease and determine after the death of my two daughters, Harriet S. G. Middleton and Henrietta G. Buchanan, *during whose lives I wish them to continue:* upon the event of my grandchildren respectively arriving at the age of thirty (30), so far as regards such grandchildren, and their respective shares,—that is to say, they *shall cease and determine in the case of each grandchild upon and as she or he reaches the age of thirty* (30), *so far as regards her or his share* coming either directly from me or from her or his mother's proportion of my estate, and that such grandchildren or grandchild from that period and age (thirty) shall hold their respective shares, or her or his share, free and discharged of the said trust to themselves for the term of their natural lives respectively, and after their deaths to the *lawful issue of their bodies,* their heirs and assigns forever, and that the said trustees shall convey the shares of such

grandchildren to them in accordance with this direction of my will."

1. Upon the whole will there are several questions raised, and the first is, what is the effect of the bequest of $5,000, to be applied to charitable purposes, in the discretion of the two daughters and granddaughter of the testator? This bequest, according to the well settled law in this State, is entirely too vague and indefinite to be executed, and it is therefore simply void. Indeed, there is no contention to the contrary; and the fund falls into and constitutes a part of the general residue of the estate. *Dashiell vs. Attorney-General*, 5 *H. & J.*, 392; 6 *H. & J.*, 1.

2. The second question is, in what manner is the fund of $10,000, which was directed to be set apart and invested by the trustees, to raise the three annuities, to be treated, inasmuch as the annuitants all died in the life time of the testator? This question would seem to be entirely settled by the terms of the will itself. It is expressly declared, that, subject to the payment of certain legacies, the fund should be held in trust, and upon the death of the annuitants, it should, together with the whole residue of the estate, be divided into three equal parts, &c. It would seem to be too clear for question, that the fund designed to raise the annuities, fell into the general residue, to be divided in the manner prescribed for the division of the general residue of the estate.

3. The next question is, what interests do the daughters and granddaughters, and their children, take in the parts of the general residue allotted to them respectively, under the will? The terms of the will upon this subject appear to be plain enough. The part that each of the daughters, and granddaughters, (the children of Mrs. Simons,) takes is to be held in trust to her separate use, and for the term of her natural life; and after her

Dulany, *et al. vs.* Middleton, *et al.*, Ex'rs, &c.

death such allotted share or part is to be held to the use
of her children, their heirs, executors and administrators.
The gift or devise to each daughter and granddaughter,
and to her children, (there being children *in esse* at the
death of the testator,) is of a present equitable interest,
—the interest in the children of the devisee and legatee
for life, while postponed in enjoyment, is a vested in-
terest, but liable to be divested *pro tanto* to let in chil-
dren that have been or may be born in the interval
between the death of the testator and that of the devisee
and legatee for life. *Tayloe vs. Mosher,* 29 *Md.,* 443;
*Leeming vs. Sherrat,* 2 *Hare,* 14; 2 *Jarm. on Wills,* (*R. &
T. Ed.,*) 704, 707-8. The contingent event, provided for
in the will, of the death of the devisee and legatee for
life without leaving issue, and the limitation over of the
property thereon, does not, as contended on the part of
the appellants, render the gift or devise to the children
of such devisee or legatee contingent, and forms no
ground for postponing the vesting of the interest devised.
It is very clear, from all the provisions of the will, that
the testator intended to dispose of his entire estate, and
that he did not contemplate the possibility of a state of
intestacy as to any part of his estate, with respect to any
event or for any interval of time. Besides this, the law
favors the vesting of estates at the earliest moment that
is consistent with the apparent intent of the testator, or
the general scheme of his will. The general principle
is, that any devise or bequest in favor of a person or per-
sons *in esse,* whether such persons be individualised or
treated as a class, unless there be some clearly expressed
desire or some manifest reason for suspending or de-
ferring the time of vesting, confers an immediately
vested interest, though the time of possession or enjoy-
ment may be postponed. This principle is especially
enforced in regard to residuary bequests, since intes-
tacy is generally the consequence of holding them to

be contingent. As said by Lord ALVANLEY, M. R., in *Booth vs. Booth*, 4 *Ves.*, 407, "Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property." See, on this subject, 2 *Jarm. on Wills*, ch. 25, secs. 1 to 7, where all the cases are collected.

4. The next question is the one about which there is the greatest difficulty, and that arises under the last clause of the will. That question is, whether the limitations contained in this clause, in respect to the duration of the trust, and the vesting of the legal estate dependent upon the termination of the trust estates, so far as the grandchildren of the testator are concerned, offend against the rule in restraint of perpetuities? and the further question, whether, by proper construction, the terms employed were intended to apply to and embrace the children of Mrs. Middleton and Mrs. Buchanan, as well as the three daughters of Mrs. Simons, deceased? It is conceded that if the terms employed in the limitation of the trust to and for grandchildren in this clause apply to all grandchildren—the children of the two living daughters as well as the children of the deceased daughter, Mrs. Simons—the rule against perpetuities would be violated. For as the limitations to the children of the two living daughters include all after born children, as well as children *in esse* at the death of the testator, and the trust not terminating, and the legal estate not allowed to vest, until they, the grandchildren, respectively attain the age of thirty years, the consequence would be, that such vesting *might* not take place till more than twenty-one years, and a fraction of a year, after a life or lives in being at the death of the testator. And assuming that the terms employed do embrace all grandchildren, as well the children of the two living daughters as the three daughters of the deceased daughter, of the testator, it is contended, that

Dulany, *et al. vs.* Middleton, *et al.*, Ex'rs, &c.

because of the violation of the rule against perpetuities, the entire limitation is void, as to all such grandchildren, even though as to some members of the class the rule would not be violated. This, as a general proposition, assuming all the grandchildren referred to to belong to one class, would be correct; but would all the grandchildren, under the provisions of this will, according to settled rules of construction, be treated as constituting a single class?

It would seem to be clear, under the provisions of the will, that the children of the three daughters of the testator, are not all of one class. They constitute three, or rather five distinct classes, with respect to the several gifts and devises to them. It is said by Mr. *Jarman,* in his work *on Wills, vol.* 1, *page* 534: "A number of persons are popularly said to form a class when they can be designated by some general name, as 'children,' 'grandchildren,' 'nephews;' but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." This statement of the principle he illustrates by reference to several decided cases. Here the whole residue of the estate is directed to be divided into three equal and distinct parcels, and one part to be sub-divided, and each part is separately given, on distinct limitations, and the part of each daughter, and that of the three granddaughters, became separate, and are independent gifts. And that being the case, it is very clear that the rule against perpetuities could only affect the two classes of grandchildren, the children of the two living daughters;—the

limitation to the three grandchildren, the children of Mrs. Simons, deceased, not being subject to the operation of the rule against perpetuities. And that being so, if we even assume, with counsel in argument, that the terms of this last clause of the will apply to all the grandchildren of the testator, the preceding limitations to and in favor of the children of Mrs. Middleton and Mrs. Buchanan would remain in full force and operation, notwithstanding the abortive attempt to engraft upon those limitations the qualification contained in the last clause of the will. *Goldsborough vs. Martin,* 41 *Md.,* 488, 502; *Heald vs. Heald,* 56 *Md.,* 303; *Ring vs. Hardwick,* 2 *Beav.,* 352; 1 *Jarm. on Wills,* 566.

But the question remains, do the terms employed in this last clause of the will, according to what appears to be the intention of the testator, apply to and embrace all his grandchildren? Upon careful consideration of the whole will, and all its separate provisions and limitations, we are clearly of opinion that they do not. If the clause be construed to apply to all grandchildren, as contended it does, such construction would produce a clear repugnancy to former limitations in the will. In the preceding limitation clause, the shares given to the two living daughters are for life, and after their death to the children of such daughters, their heirs, &c. But in this last clause the limitation to the grandchildren is for life, "and after their deaths to the *lawful issue of their bodies,* their heirs and assigns forever;" by which, if the words "issue of their bodies" be construed to mean children, even as applied to personal estate, this limitation would be in conflict with the preceding limitation to the children of the two living daughters, but would be entirely consistent with the preceding limitation to the three grandchildren, daughters of Mrs. Simons, deceased. Then, again, the testator throughout his will has uniformly spoken of and referred to the children of

his deceased daughter as his grandchildren or granddaughters, but not so as to the children of his living daughters.

But it is contended that all inference that might be drawn from these circumstances is overcome by the express terms employed in this last clause of the will—that is to say, wherein the testator has declared at what period the trusts shall terminate, "so far as regards her or *his* share coming either directly from me or from her or *his* mother's proportion of my estate." Some of these terms are certainly inappropriately used, upon the supposition that only the three granddaughters Simons were referred to; but, as we have said, we are convinced, upon considering all the provisions of the will, that there has been an inappropriate use of pronouns by the testator in this clause. Doubtless, unless forbidden by what appears to be the clear intention of the testator, effect should be given to every word used by him; but cases sometimes occur, where, from the misuse of terms, this cannot be done; and the meaning of terms have to be modified, and sometimes words even rejected, in order to preserve and give effect to what is the manifest intention of the testator. The general rule upon this subject cannot be better stated than in the words of Mr. Justice LAWRENCE, used in delivering the celebrated opinion of his in the case of *Thellusson vs. Woodford*, 4 *Ves.*, 311, where, in laying down the rules of construction, he said: "It has been rightly admitted, that, whatever may be the strict, grammatical, construction of the words of a will, that is not to govern, if the intention of the testator requires a different construction; and this has been rightly admitted; for there can be no rule better established, than that in the construction of wills, the intention of the testator is to govern, if that intention be consistent with the rules of law; and every inaccuracy of grammar and every impropriety of terms shall

be corrected, if that intention be clear and manifest; and this rule of construction holds in all cases ; whether the testamentary disposition be such as a Court will favor, or the contrary.'' The same principle is laid down, and the subject fully discussed, in 2 *Jarm. on Wills*, in *ch.* 15.

5. With respect to the duration of the trusts created, the terms of the will would seem to be free of doubt. It is declared that the trusts *shall cease and determine* after the deaths of the two daughters, Mrs. Middleton and Mrs. Buchanan, during whose lives the testator wished them to continue. This, in view of the language that follows, must be taken to mean the trusts of the two separate parts of the estate allotted to the two daughters, and that the trust should 'cease upon the death of each daughter respectively, as to her particular part, and to which her children will then become entitled in possession. It is not declared that the trusts shall continue during the joint lives of the two daughters, nor is it declared that they shall 'continue during the life of the survivor, as to both the separate parts of the estate; and there is no perceptible reason for the continuation of the trust beyond the life of the daughter who may first die, as to the particular part of the surviving sister, separated and made distinct by division of the estate, according to the' directions of the will. And with respect to the duration of the trust of the shares of the grandchildren, the time for it to cease is fixed at a definite period, without in any manner being dependent upon the event of death of the present living daughters. It is declared that ''upon the event of my grandchildren respectively *arriving at the age of thirty years, so far as regards such grandchildren, and their respective shares*—that is to say, they (the trusts) *shall cease and determine in the case of each grandchild, upon and as she or he reaches the age of thirty*, so far as regards

Dulany, *et al. vs.* Middleton, *et al.,* Ex'rs, &c.

her or his share," &c. The testator treats the share of each grandchild as a separate and distinct part of his estate, and limits the duration of the trust, in the case of each grandchild, to the age of thirty years, and upon each grandchild attaining that age, the trustees are directed to convey the share to. be held discharged of the trust. By the decree of the Court below the termination of the trust, as to the shares of the grandchildren, is made to'depend upon such grandchildren surviving both of their aunts as well as attaining the age of thirty years,—thus treating the duration of the trusts for the shares of the grandchildren as being dependent upon the lives of the two daughters of the testator, though those lives may run many years beyond the age of thirty of the grandchildren. In this we think there is error in the decree, and that it should be modified in this particular.

6. With respect to the powers of the trustees, to sell any part of the real or personal estate, to pay debts or legacies, or to effect division among the devisees and legatees, according to the directions of the will; or to make or change investments, whether of real or personal property, in their discretion, the terms of the will would seem to admit of no question. The terms of the will are plain in conferring such powers, to be exercised in the manner and under the circumstances designated by the testator.

In all respects, except in the one particular mentioned, we agree with the Court below in the decree appealed from; but for the error referred to, we shall reverse the decree and remand the cause that the decree may be modified in accordance with this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 6th February, 1890.)