The bills of exception in a criminal case filed more than 90 days after the overruling of the motion for a new trial and the pronouncement of sentence, notwithstanding two orders in the record each extending the time for filing 30 days, cannot be considered.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2803, 2857–2860; Dec. Dig. ⬅1092(9).]

Appeal from District Court, Grimes County; S. W. Dean, Judge.

Elias Bowen was convicted of murder, and he appeals. Affirmed.

T. P. Buffington, of Anderson, and Carl T. Harper, of Madisonville, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of murder, his punishment being assessed at seven years' confinement in the penitentiary. The statement of facts was filed within the time required by law, but the bills of exception were not. They, therefore, are not considered. The record with reference to the bills of exception shows that they were filed more than 90 days after the overruling of the motion for a new trial and pronouncing the sentence. This statement is made in view of the fact that the court lasted over eight weeks. The bills of exception were filed more than 90 days after sentence was pronounced. There are two orders in the record for 30 days, each extending the time in which to file the bills of exception, but these, computed together, do not bring the filing of the bills within the 90 days. In support of this see Carden v. State, 70 Tex. Cr. R. 271, 156 S. W. 683, Roberts v. State, 70 Tex. Cr. R. 588, 157 S. W. 1193, and Jones v. State, 73 Tex. Cr. R. 153, 165 S. W. 144.

There were no exceptions to the charge at the time it was read to the jury. In fact, there seems to be no particular criticism of the instructions of the court.

It is contended that the jury was not authorized to find appellant guilty of murder and a consequent verdict of seven years in the penitentiary; that under the facts and the charge of the court appellant's conviction should have been of no higher offense than manslaughter. The evidence clearly raises the issue of manslaughter on account of the insulting conduct of the deceased toward the wife of the defendant. While the issue of manslaughter was strongly presented by the defendant, the evidence for the state was sufficient to authorize the jury to find that his mind was not in such condition as demanded a conviction for manslaughter. That the jury could have done so is not questioned, yet the evidence justifies them in finding that his mind was not so influenced. The two issues were in the case, and we think sufficiently strong for the jury to have arrived at the verdict they did reach. We deem it unnecessary to recapitulate the evidence. It would serve no useful purpose to do so.

Finding no reversible error in the record as it is presented to us, the judgment will be affirmed.

---

HAGOOD v. HAGOOD et al. (No. 8318.)*

(Court of Civil Appeals of Texas. Ft. Worth. March 25, 1916. Rehearing Denied April 29, 1916.)

1. WILLS ⬅439—CONSTRUCTION—INTENT OF TESTATOR.

A cardinal rule in the interpretation of wills is that the intent of the testator is the object to be ascertained.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ⬅439.]

2. WILLS ⬅441—CONSTRUCTION—EXTRANEOUS CIRCUMSTANCES — SUBSTITUTION OF TERMS.

While the extraneous circumstances attending execution of a will may be considered, the principle is never so extended as to substitute new words for those used in the will, or to add terms not inferable from the writing as a whole.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 958; Dec. Dig. ⬅441.]

3. WILLS ⬅487(3) — INTENT OF TESTATOR — PAROL EVIDENCE.

In the absence of ambiguity in the terms of a will, previous conversations and other matters

in parol will not be considered to ascertain testator's intent.

[Ed. Note.—For other cases. see Wills, Cent. Dig. § 1027; Dec. Dig. ⊙═487(3).]

**4. WILLS ⊙═865(4)—LAPSED DEVISES—PREDECEASE OF DEVISEE.**

Where a devise is made to two or more persons, and one or more of them die before the testator, and there are no words of survivorship in the will, the property, which by the terms of the will goes to such deceased person or persons, lapses and becomes a part of testator's undevised estate, and descends to his heirs regardless of the terms of the will; the surviving legatees taking only such part of the estate as is specifically bequeathed to them.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2198; Dec. Dig. ⊙═865(4).]

**5. WILLS ⊙═547—DEVISE TO CLASS—PREDECEASE OF PART.**

Where a devise is made to two or more persons as a class, and one or more die before testator, the surviving legatee or legatees take testator's entire estate, including such part as by the will was bequeathed to the legatee who predeceased testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1179-1181, 1185; Dec. Dig. ⊙═547.]

**6. WILLS ⊙═522—CONSTRUCTION—"CLASS."**

A "class," as the word is used in the law of wills, is where several persons answer the same description, and sustain the same relation to the legacy, so that one word describes them all; each take an equal share in the property originally, and not by way of substitution or derivatively, and each takes absolutely; the gift must be an aggregate sum to a body of persons uncertain at the time of the gift, as to children, grandchildren, nephews, brothers, or sisters. (Quoting Words & Phrases, "Class.")

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1114, 1128; Dec. Dig. ⊙═522.]

**7. WILLS ⊙═523—CONSTRUCTION—"GIFT TO A CLASS."**

"Gifts to a class," as the term is used and understood in the construction of wills, refers to persons in the aggregate bearing a certain relation to testator or to each other, and a devise to one or two members of the class will not constitute them a class in legal contemplation, unless the will expressly declares that the individuals so selected from the class are to enjoy the rights of survivorship in the case of the death of any of them; and, unless the will so provides, the legacy so given to one of such members will lapse on his death before the testator.

[Ed. Note.—For other cases. see Wills, Cent. Dig. § 1115; Dec. Dig. ⊙═523.

For other definitions, see Words and Phrases, Second Series, Gift to a Class.]

**8. WILLS ⊙═523—DEVISE TO CLASS.**

Where testator's will read that it gave, devised, and bequeathed to his beloved brothers (naming two of them) all of the property, both real and personal, which testator might die seised and possessed of, wherever situated and located, such will did not make a devise to a class, since it was not a devise to all of testator's brothers, but to two only; and, where one devisee predeceased testator, the surviving brother did not take the entire property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1115; Dec. Dig. ⊙═523.]

**9. EVIDENCE ⊙═65—KNOWLEDGE OF LAW BY TESTATOR—PRESUMPTION.**

It must be presumed that testator knew the legal effect of the provisions of his will when he executed it.

[Ed. Note.—For other cases. see Evidence, Cent. Dig. § 85; Dec. Dig. ⊙═65.]

**10. PLEADING ⊙═290(3)—VERIFICATION — REPEAL—EFFECT.**

Act March 3, 1913 (Acts 33d Leg. c. 127), providing that every allegation or fact relied upon as a cause of action or defense by either a plaintiff or defendant should be verified by affidavit, and that, in the absence of a verified denial of the facts so alleged, they should be considered as confessed, repealed by Act March 22, 1915 (Acts 34th Leg. c. 101), relating to a mere matter of procedure, is no longer available even on appeal.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 861, 886½; Dec. Dig. ⊙═290(3).]

**11. WILLS ⊙═488 — PAROL EVIDENCE — AMBIGUITY.**

To the rule that parol proof will not be received to alter the terms of a will, an exception is made where there is ambiguity or uncertainty either in the terms used in the writing itself or because of the existence of some extraneous fact.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1024, 1025, 1033-1036; Dec. Dig. ⊙═488.]

**12. WILLS ⊙═488—AMBIGUITY.**

Where testator devised to two brothers named all of the property, both real and personal, which he might die seised and possessed of, wherever situated, and one of the named devisees predeceased testator, there was no ambiguity in the terms of the will or on account of the existence of extraneous facts.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1024, 1025, 1033-1036; Dec. Dig. ⊙═488.]

**13. WILLS ⊙═481—DATE OF SPEAKING.**

A will speaks from the death of testator, not as of the date of its execution.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1005-1007; Dec. Dig. ⊙═481.]

Dunklin, J., dissenting.

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Partition suit by R. K. Hagood and others against R. B. Hagood. From a judgment for plaintiffs, defendant appeals. Affirmed.

Capps, Cantey, Hanger & Short, of Ft. Worth, for appellant. McLean, Scott & McLean, of Ft. Worth, for appellees.

CONNER, C. J. This suit was instituted by R. K. Hagood, Mrs. Elizabeth R. Billington, and Mrs. Emma King, joined by their husbands pro forma, against R. B. Hagood for a partition of the estate of R. L. Hagood, deceased. R. K. Hagood was a brother, and Mrs. Billington and Mrs. King daughters of another brother, of said R. L. Hagood. The defendant, R. B. Hagood, was also a brother of R. L. Hagood, deceased, and it was alleged that the several parties named were the sole surviving heirs of R. L. Hagood, and as such entitled to receive the property for which the suit was brought. It was alleged that the defendant, R. B. Hagood, was in possession of and claiming to own all of such property. The defendant answered, and, among other things, pleaded the last will and testament of R. L. Hagood by virtue of which the defendant claimed the entire estate in controversy. The trial was by the court without a jury upon an agreed state

of facts, and resulted generally in favor of the plaintiffs, and the defendant has appealed.

The facts as agreed upon by all parties are:

"That R. L. Hagood, R. B. Hagood, and J. O. Hagood were brothers, the said R. B. Hagood being at the time of the execution of the wills hereinafter mentioned, and for a long time prior thereto, married and having a family. The said R. L. Hagood and J. O. Hagood were never married, but were bachelors at the time of their decease, and R. B. Hagood, J. O. Hagood, and R. L. Hagood owned an equal interest in the land and house where they all made their home, R. B. Hagood defraying the living expenses of himself and family and the two bachelor brothers, all residing together in the same house for several years prior to the execution of the wills, and up to the time of the decease of both J. O. and R. L. Hagood. All property owned by the three were acquired jointly and owned in equal shares, except the 241 acres of land owned by J. O. Hagood and R. B. Hagood, as hereinafter shown.

"That on October 31, 1902, J. O. Hagood and R. L. Hagood simultaneously executed, declared, and published the following wills, respectively:

" 'State of Texas, County of Tarrant.

" 'I, J. O. Hagood, of said county and state, being of sound and disposing mind and memory, and being desirous to settle my worldly affairs while I have strength so to do, do make this my last will and testament hereby revoking all others heretofore by me made.

" 'Item 1. I desire and direct that my body be buried in a decent and Christian-like manner suitable to my circumstances and conditions in life.

" 'Item 2. I desire and direct that my just debts be paid without delay by my executors to be hereinafter appointed.

" 'Item 3. I give, bequeath and devise to my beloved brothers, R. B. Hagood and R. L. Hagood, all of the property both real and personal which I may die seised and possessed of wherever situated and located.

" 'Item 4. I hereby appoint my said brothers R. B. Hagood, R. L. Hagood, citizens of Tarrant county, Texas, my executors and I desire that no bond be required of them, and that upon my death they or either of them have this will probated and that they file an inventory and appraisement of my estate, and that no other action be had in the probate court in reference to my estate except as herein provided.

" 'In testimony whereof I hereunto set my hand this the 31st day of October, 1902.

" '[Signed]   J. O. Hagood.

" 'Signed, declared and published by J. O. Hagood as his last will and testament in the presence of us the attesting witnesses, who have hereunto subscribed our names in the presence of each other, and in the presence of said J. O. Hagood at his special instance and request this the 31st day of October, 1902.

" 'Witnesses:              S. B. Canty.
                              " 'Wm. Capps.'

" 'Will.

" 'State of Texas, County of Tarrant.

" 'I, R. L. Hagood, of said county and state, being of sound and disposing mind and memory, and being desirous to settle my worldly affairs, while I have the strength to do so, do make this my last will and testament, hereby revoking all others heretofore by me made.

" 'Item 1. I desire and direct that my body be buried in a decent and Christian-like manner suitable to my circumstances and conditions in life.

" 'Item 2. I desire and direct that my just debts be paid without delay by my executors to be hereinafter appointed.

" 'Item 3. I give, devise and bequeath to my beloved brothers, R. B. Hagood and J. O. Hagood all of the property both real and personal which I may die seised and possessed of wherever situated and located.

" 'Item 4. I hereby appoint my said brothers, R. B. Hagood and J. O. Hagood, citizens of Tarrant county, Texas, my executors, and I desire that no bond be required of them, and that upon my death they or either of them have this will probated and that they file an inventory and appraisement of my estate, and that no other action be had in the probate court in reference to my estate except as herein provided.

" 'In testimony whereof, I hereunto set my hand this the 31st day of October, 1902.

" '[Signed]   R. L. Hagood.

" 'Signed, declared and published by R. L. Hagood as his last will and testament in the presence of us the attesting witnesses, who have hereunto subscribed our names in the presence of each other and in the presence of said R. L. Hagood at his special instance and request, this the 31st day of October, 1902.

" 'Witnesses:              S. B. Canty.
                              " 'Wm. Capps.'

"That, at the time of the execution of the aforesaid wills by J. O. Hagood and R. L. Hagood, they were of the ages respectively of 58 and 66 years, and were consumptives and anticipated death therefrom within the course of a few years, and did each actually die from said disease. That the said R. B. Hagood was, on the contrary, in robust health, was married and had a family, and the said R. L. Hagood and J. O. Hagood lived with him and his family and were cared for by them. That said wills were executed with the intention upon the part of J. O. Hagood and R. L. Hagood that all the property owned by them at their death should finally pass to the survivor of the beneficiaries named in said wills respectively, and that they so instructed the attorneys who drafted the wills and understood the wills to so provide when they were executed and published, and that the attorneys drafting the wills intended to so provide, and said attorneys further believed, and now believe, that the wills as drafted carried out of the expressed intention of the said J. O. Hagood and R. L. Hagood. That J. O. Hagood died on the 17th day of June, 1909, and his will hereinbefore set out was duly probated in the county court of Tarrant county, Tex., and the said R. L. Hagood and R. B. Hagood qualified as executors under said will, and received all the property and estate of the said J. O. Hagood thereunder. That at the time of the death of the said J. O. Hagood the said R. L. Hagood, R. B. Hagood, and J. O. Hagood owned the following real estate which had been acquired by their joint efforts while living and working together, and in which each of the three owned an undivided one-third interest, viz.: Situated in Tarrant county, Tex., and being:

160 acres of Wilcox Survey No. 7.
160 acres of Wilcox Survey No. 8.
160 acres of Perry Survey No. 9.
44½ acres Smallwood Survey.
49 acres of Arc Survey.
320 acres of A. Stallons Survey.
80 acres of McHorse Survey.

Total 973½ acres.

"That R. L. Hagood died on the 3d day of October, 1912, and at his death the will hereinbefore set out was probated by the said R. B. Hagood, who qualified as executor thereunder; and that the said R. B. Hagood had gone into possession of all the property and estate left by the said R. L. Hagood, claiming to own same in his own right under and by virtue of the aforesaid will of the said R. L. Hagood. That at the time of the death of the said R. L. Hagood the said R. B. Hagood, defendant herein, and the said R. L. Hagood owned jointly the 973½ acres of land hereinbefore described, each

of them being entitled by virtue of their original one-third interest therein and the will of the said J. O. Hagood to an undivided one-half interest in said property. That at the time of the death of the said J. O. Hagood he and the said R. B. Hagood owned equally the following real estate, situated in Tarrant county, Tex., viz.:

160 acres out of the Wilcox Survey No. 7.
40 acres out of the B. B. & R. Survey.
41 acres out of the A. S. Haynes Survey.

Total 241 acres,

—one-fourth of which, by the terms of the will of the said J. O. Hagood, became the property of the said R. L. Hagood; and that this one-fourth interest in and to the said 241 acres of land next above described was owned and held by the said R. L. Hagood at the time of his death.

"(2) That at the time of his death R. L. Hagood and R. B. Hagood owned equally the following personal property which had been acquired by the joint efforts of himself and the said R. B. Hagood after the death of J. O. Hagood, viz.: 3 mules, 3 mares, 1 mule colt, and 6 head of cattle of the present total value of $700.

"(3) That at the time of his death the said R. L. Hagood, together with the said R. B. Hagood, had cash on hand the said R. L. Hagood's part of which amounted to $5,137.13. That •at the time of his death R. L. Hagood owned, together with the said R. B. Hagood, certain notes amounting to the said R. L. Hagood's part of $1,101. That for a period of three years prior to his decease R. L. Hagood was an invalid afflicted with tuberculosis as aforesaid, and was waited upon and cared for by R. B. Hagood and family, and the reasonable value of such care and attention so shown R. L. Hagood by the said R. B. Hagood is the sum of $50 per month for the first two of the aforesaid three last years of his life, and $65 per month for the last year of his life. That at the time of his death R. L. Hagood left surviving the following relatives, viz.: R. B. Hagood, defendant and brother, R. K. Hagood, one of the plaintiffs and brother, Elizabeth Billington, née Hagood, and Emma R. King, née Hagood, nieces, the sole and only children and heirs of W. T. Hagood, a deceased brother, who died many years prior to the making of the wills. That the said R. K. Hagood, Elizabeth Billington, and Emma R. King are each and all adults, and were living long prior to the execution of the wills of J. O. Hagood and R. L. Hagood hereinbefore set out, of which facts the said R. L. Hagood and J. O. Hagood were each aware.

"If plaintiffs are entitled to recover at all, they are entitled to recover the following: (a) An undivided interest in the 973½ acres hereinbefore set out, amounting to 162½ acres; (b) an undivided interest in the 241 acres hereinbefore set out, amounting to 20 acres; (c) an interest in the mules, mares, mule colt, and cattle hereinbefore mentioned, aggregating at the present time $117; (d) of R. L. Hagood's interest in the cash on hand $1,712.37; (e) of R. L. Hagood's interest in the notes hereinbefore mentioned, $367. Less the aforesaid sum of $660, being the pro rata amount of plaintiffs' part of the claim due R. B. Hagood for care and attention shown R. L. Hagood during the time which he was an invalid preceding his decease as aforesaid, if the court should hold that such sum is properly an offset. R. B. Hagood paid $270 for funeral expenses of R. L. Hagood, and plaintiffs owe ⅓ of that sum, viz., $90.

"In making the foregoing agreement plaintiffs do not waive any legal objection they may have to the admissibility of the circumstances surrounding the execution of the will of R. L. Hagood, but specifically object to the admission and consideration by the court of any extrinsic evidence to show the intention of the testator, R. L. Hagood, on the ground that the testator's in-tention should be ascertained from his will alone, or their right to object that R. B. Hagood cannot offset the sum hereinabove agreed upon as the reasonable value of his services in waiting upon, caring for, and attending the said R. L. Hagood during his last illness, against their right to recover, if any."

Appellant presents the controlling question in the case in his first assignment of error and in the proposition thereunder, which read:

Assignment of error: "The district court erred in holding that the legal effect of the will of R. L. Hagood, deceased, was not a gift of all his estate, remaining after the payment of his debts, to his brothers, R. B. Hagood and J. O. Hagood, as a class, and that R. B. Hagood, who alone survived R. L. Hagood, did not take the entire estate of R. L. Hagood, deceased, as a surviving member of such class."

Proposition: "The will of R. L. Hagood plainly providing that 'all of the property, both real and personal, which I may die seised and possessed of, wherever situated and located,' should go to his beloved brothers, R. B. Hagood and J. O. Hagood, clearly evidenced• an intention to devise and bequeath the whole of his estate to his said two brothers, to the exclusion of every one (although he was aware of the existence of his brother R. K. Hagood, and the children of the deceased W. T. Hagood), and the agreed facts showing that the three brothers had made their home together for many years prior to the execution of the will, the defendant defraying the living expenses of the three; that practically all the property acquired by the three was owned jointly, except about 200 acres of land which was owned jointly by the defendant and J. O. Hagood (an undivided interest in which R. L. Hagood took under J. O. Hagood's will); that the two wills, identical in form and substance, making R. B. Hagood a common beneficiary, were executed at the same time; that, at the time of the execution of the wills, J. O. and R. L. Hagood were bachelors and well along in years, afflicted with consumption, and anticipating death therefrom; that they were cared for by the defendant and his family; that they desired that all of the property owned by them should finally pass to the survivor, necessarily the defendant; and the language of the will being consistent with such intention, and being such language as necessarily must have been used by testator in creating a class of his two brothers, to the exclusion of others similarly related, the trial court erred in not holding that testator by his will created a class composed of his two brothers, J. O. Hagood and R. B. Hagood, and, upon the death of J. O. Hagood prior to the testator, defendant R. B. Hagood took the entire property devised, as surviving member of such class, and in not thereupon rendering judgment for defendant."

[1, 2] It is a cardinal rule in the interpretation of wills that the intent of the testator is the object to be sought; and if we could but give effect to the instructions to the attorneys who reduced the will to writing and to their purpose in doing so, and read into the will under consideration the terms of the admitted facts, that at the time of its execution R. L. Hagood intended "that all the property owned" by him at the time of his death "should finally pass to the survivor of the beneficiaries named in" the will, then indeed there would be no difficulty. In such event it would be clear that the judgment should be reversed and here rendered for appellant; but no such terms, or terms of like import, are to be found in the will as actual-

ly written, and under well-settled rules of construction we cannot import them into the will. While in construing a will the extraneous circumstances attending its execution may be considered so as to place the court as nearly as possible in the situation of the testator at the time, the principle is never so extended as to substitute new words for those used in the will, or to add thereto terms not inferable from the writing as a whole. As said in a recent discussion of the Supreme Court of Missouri (Mudd v. Cunningham, 181 S. W. 386):

"It must stand conceded that courts of equity cannot correct wills under the mere guise of a mistake. Courts cannot and do not reform wills. The learned annotator of the case of Lomax v. Lomax (218 Ill. 629, 75 N. E. 1076), in 6 L. R. A. (N. S.) loc. cit. 945, says:

"'The reason why the chancery powers of a court cannot be invoked to reform a will is that an action to reform a written instrument is essentially one for a specific performance. A devisee is a mere volunteer; the making of a will being a voluntary act, there is, therefore, no consideration to support the action, as in actions to reform deeds or contracts. Volunteers under wills have no equity whereon to found a suit for specific performance. Sturgis v. Work, 122 Ind. 134, 22 N. E. 996, 17 Am. St. Rep. 349.'"

[3] Hence it is that in order to close the door to mistake and uncertainty as to the precise terms used, faults of memory, erroneous inferences from circumstances happening at the time, and even to perjuries, it is firmly established that, in the absence of ambiguity in the terms of a will, previous conversations and other things lying in parol will not be considered for the purpose of ascertaining the intent of the testator whose lips have been closed by death. His words, unless ambiguous as expressed in the solemn instrument executed under the formalities required by law, must alone afford the light by which the mind is to be guided in the ascertainment of the testators' intent. To illustrate: It is said in the case of Lenz v. Sens, 27 Tex. Civ. App. 442, 66 S. W. 110:

"The intention of the testator, as gathered from the will, must control in the construction of a will. Parol evidence of the circumstances attending the testator and the objects of his bounty, and of the condition and character of the estate, is admissible to throw light upon the will, so as to get at the intention of the testator *ambiguously* expressed, but not to vary the terms themselves of the will. The intention cannot be shown by parol evidence."

In Schouler on Wills, § 567, it is said:

"The maxim hardens into a truism, in modern times, that the written will must speak for itself; that the testament shall afford its own testimony. Hence the modern interpretation of wills becomes subject to rules much the same as apply to written contracts; and eminent jurists assert that there is no material difference of principle between the two classes of writings, except what naturally arises from the different circumstances of the parties; yet in those differing circumstances appears no little ground of variance. Where, therefore, the language employed in the will is clear and of well-defined force and meaning, extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict this language,

but the will must stand as it was written. To insert or substitute in effect that which the will never contained our courts have stubbornly refused, and decline, to their honor, the insidious temptation of shaping men's wills for them. Far safer it is, as they deem it, to adhere to general limits prescribed by general rules. And if written testimony dehors the will should be rejected from this point of view, much more should be that looser and less credible parol proof which is purely oral. In short, extrinsic evidence is incompetent to show the intention of a testator, where the will speaks for itself with a clear and unambiguous meaning; nor can it be received to show a different intention from that which the instrument discloses; nor can it enlarge or diminish by construction the disposition as written out and executed, or supply any omissions or defects which may have occurred through mistake or inadvertence. That which a testator executes as his will must so operate, notwithstanding his mistake of law; nor can it be set up from drafts, from contemporaneous memoranda, or even from the direct testimony of one's own scrivener or copyist, still less that loose hearsay which is always untrustworthy, that one mistook in fact what was written out."

Mr. Jarman in his treatise on Wills says:

"As the law requires wills, both of real and personal estate, to be in writing, it cannot, consistently with this doctrine, permit parol evidence to be adduced either to contradict, add to, or explain the contents of such will, and the principle of this rule evidently demands an inflexible adherence to it, even where the consequence is the partial or total failure of the testator's intended disposition; for it would have been of little avail to require that a will ab origine should be in writing, or to fence a testator round with a guard of attesting witnesses, if, when the written instrument failed to make a full and explicit disclosure of his scheme of disposition, its deficiencies might be supplied, or its inaccuracies corrected, from extrinsic sources. No principle connected with the law of wills is more firmly established or more familiar in its application than this; and it seems to have been acted upon by the judges as well as of later times, with a cordiality and steadiness which show how entirely it coincided with their views."

On the same subject, Redfield on Wills, vol. 1, p. 621, uses the following language:

"In all this class of cases it is entirely obvious, upon principle, that neither the expressed intention of the testator shown by extrinsic evidence, nor his conjectural expectation, in the event of death of the legatee, an event not specifically provided for by him, and not shown, by anything in the will, to have been in his mind, can be allowed to control the legal and established construction, or the natural import, of the words used in the will. The only advantage which in such cases can be derived from extrinsic evidence is to enable the court to place themselves in the precise position of the testator, with his knowledge of extraneous facts and circumstances, so as to enable them to give such a construction to the words as the testator himself would have done; i. e., such as will carry out his intention in using them, as far as that can be clearly gathered *from the words of the will.*" (Italics ours.)

See, also, Philleo v. Holliday, 24 Tex. 38; Hunt v. White, 24 Tex. 643; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; Underhill on Wills, vol. 1, p. 444; Herzog v. Title Guarantee, etc., Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146; Remson Preparation of Wills, pp. 343 and 344.

[4, 5] In accord with the foregoing princi-

ples, appellant cannot reasonably hope to overturn the trial court's judgment by a direct reading of the agreement as to the testator's intent into the will under consideration. Indeed, there is no such contention seriously made. The contention, as will be seen by an examination of appellant's assignment and proposition which we have quoted, seeks to obtain the same result by an indirect method. In other words, the contention is that we should construe the bequest of R. L. Hagood to his brothers J. O. Hagood and R. B. Hagood as a devise to a "class." The authorities are uniform to the effect that where a devise is made to two or more named persons, and one or more of such persons die before the testator, and there are no words of survivorship in the will, the property, which by the terms of the will goes to such deceased person or persons, lapses and becomes a part of the testator's undevised estate and descends to his or her heirs, regardless of the terms of the will. In such cases the legatees who survive the testator take only such part of the testator's estate as is specifically bequeathed to them. It is otherwise, however, when the devise is to two or more persons as a "class." In cases of this character the surviving legatee or legatees take the testator's entire estate, including such part as by the terms of the will had been bequeathed to legatees whose decease preceded that of the testator. The very able counsel who have argued this case pro and con have cited us to numerous cases which discuss the question of whether a given devise was to a class instead of to named persons. They are too numerous to discuss separately. Entire consistency and harmony among them, perhaps, cannot be affirmed. But appellees have presented in concrete form substantially correct definitions of the terms "class," and "gifts to a class," that we think fairly reflect the state of the authorities on the subject, viz.:

[6] "A 'class,' as used in the law of wills, is where several persons answering the same description sustain the same relation to the legacy so that one word describes them all; each takes an equal share in the property, and each takes originally, and not by way of substitution or derivatively, and each takes absolutely. A number of persons are said to form a 'class' when they can be designated by the same general name as 'children,' 'grandchildren,' 'nephews,' 'brothers,' or 'sisters.' The gift must be an aggregate sum to a body of persons uncertain in number at the time of the gift."

[7] "Gifts to a 'class,' as that term is used and understood in the construction of wills, refers to persons in the aggregate bearing a certain relationship to the testator or to each other; and a devise to one or two members of that class will not constitute such favored members a class in legal contemplation, unless a testator, by the terms of his will, expressly declares that such individuals so selected from a class are to enjoy the rights of survivorship in case of the death of one of them, and unless the will so provides the legacy so given to one of such members will lapse on his death before the testator."

As illustrating these definitions, it will not be improper to cite a few authorities. Thus,

186 S.W.—15

we find in 1 Words & Phrases, under the title of "Class," p. 732, the following definitions, with authorities cited:

"A 'class' is a number of persons or things ranked together for some common purpose (Bouvier's Law Dictionary), and when a legacy is to a class all those will take who are embraced in the class at the time the legacy takes effect in point of enjoyment."

The same authority defines a "gift to a class" as—

"a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportion; the share of each being dependent for its amount upon the ultimate number." Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146.

Again, in volume 2 of the same authority, page 740, a gift to a class is again defined as—

"a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are to take in equal or in some other definite proportion; the share of each being dependent for its amount on the ultimate number of persons," citing numerous authorities. But "a devise to two persons, naming them, 'with whom I live and whom I regard and treat as my adopted daughters,' is not a devise to a 'class,' entitling one to the entire devise on the death of the other before the death of the testator." In re Hittell's Estate, 141 Cal. 432, 75 Pac. 53, 54.

Again, in the case of Melton v. Sellars, 181 S. W. 346, by the Court of Appeals of Kentucky, it is said:

"Under Thomas v. Thomas, 149 Mo. 426, 51 S. W. 111, 73 Am. St. Rep. 413, and Jarman on Wills, p. 232, cited by appellants, the devise is to a class and not to individuals, if the gift is 'to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time.'"

In Ritch v. Talbot, 74 Conn. 137, 50 Atl. 42, a testator devised the balance of the proceeds of a sale of realty and the residue of his personal estate to two brothers, naming them; one of the brothers died before the testator, leaving a number of heirs. It was held that the bequest was not to a class, but to the brothers individually, and that the legacy did not lapse on the death of the legatee, but descended to the legatee's children by virtue of a statute quoted. And in 20 Decennial Edition of the American Digest it is stated, quoting an Ohio case not available to us, that "when the devise is made to persons designated by name, it is an individual devise, and is a gift to them as individuals and not as a class, though the persons designated may constitute a class."

See, also, other cases cited under section 523 of the Decennial mentioned above; and Farnam v. Farnam, 53 Conn. 261, 2 Atl. 325, 5 Atl. 682; Dulany v. Middleton, 72 Md. 67, 19 Atl. 146; In re Russell, 168 N. Y. 169, 61 N. E. 166; In re Harrison, 202 Pa. 331, 51 Atl. 976; Watkins v. Blount, 43 Tex. Civ. App. 460, 94 S. W. 1116; Bill v. Payne, 62 Conn. 140, 25 Atl. 354; Coleman v. Jackson, 126 S. W. 1178; Underhill on Wills, vol. 2, p. 798, § 599.

[8] From the authorities as a whole, we are of the opinion that the trial court correctly construed the will we have under consideration, and that it cannot be properly construed as a devise to a "class." It was not a devise to "all of the brothers" of R. L. Hagood, but to two only. As used in the will, the term "brothers," as it seems to us, is but descriptive in its effect. In addition to the names given, it serves to further identify the individuals to whom the testator intended his bequest to go. No other terms in the will indicate that the question of classification was in the mind of the testator, or that it was his purpose to form a "class," or that his bequests were intended to go to a "class," as contradistinguished from the individuals specifically named. Of his brothers he named J. O. and R. B. Hagood, and the addition of the term "brothers" can no more make of the two brothers named a class, as it seems to us, than it could be so said if, in a given case, a testator residing in a community of different nationalities should devise property to the Americans, John Doe and Richard Roe, or to two named individuals "colored." Such terms by no means could be reasonably construed as intending a devise to "all of the Americans" or "all of the colored persons," as the case might be, in the community.

Confining ourselves to the will itself, it manifests the intention at the time it was written that his (R. L. Hagood's) property at his decease should go to J. O. Hagood and R. B. Hagood. By no reasonable construction can it be said that the words are to be construed as an intention to devise the whole of his property to R. B. Hagood, the appellant in this case. The evident purpose, within the meaning of the terms used, was that R. B. Hagood should have one-half only, the other half to go to his brother J. O. Hagood. Nothing on the face of the will indicates that the testator contemplated the contingency that actually thereafter happened, to wit, the contingency of J. O. Hagood's death prior to that of the testator, and that the testator in that event desired the whole of his property to go to R. B. Hagood. Had such been the purpose, it would have been easy to have provided for the contingency by inserting terms of survivorship. In other words, it would have been easy for the testator to have referred to such a possible contingency, and to have directed, in the event of its happening, that his property should go to the survivor. This was not done, and we do not feel that we can by implication insert such words in the will, and thereby cast one-half of R. L. Hagood's estate at the time of his death from the appellees in this case, to whom, if the will be given its legal effect, it properly descended, and vest it wholly in appellant. To do so, as it seems to us, is in effect to make a will not executed under the formalities of the law, rather than to declare the legal effect of a will as actually made.

[9] It is urged that the testator's failure to change his will after the death of his brother is to be construed as an intention on his part that R. B. Hagood should take all of his property to the exclusion of his surviving brother and the children of another deceased brother, the appellees in this case; but we do not think this inference is necessarily to be indulged. While it is evident that at the time of the execution of his will he had the purpose that the whole of his property should go to the two brothers named therein, there is nothing in the will, nor in the agreed statement in this case, that indicates any hostility to his other brother not named, or to the children of his brother then deceased; and we think quite as reasonable an inference, under all the circumstances, is that upon the death of J. O. Hagood he felt contented to let his property go as the law and the terms of his will provide. It must be presumed that he then knew the law to be that, in the absence of words of survivorship in his will, but one half of his property under its terms would go to R. B. Hagood, and that the other half would descend to the appellees under our statutes of descent and distribution, and his failure to change the terms of his will rather favors the construction that he so intended it; there being nothing, as before stated, in the will or in the circumstances, indicating any animosity whatever to the appellees in this case, who were his heirs, and, in the absence of a will otherwise providing, entitled to a share of his undevised estate. The agreed statement shows that the will under consideration was executed on the 31st day of October, 1902. Both J. O. Hagood and R. L. Hagood remained living until on the 17th day of June, 1909, when J. O. Hagood died. R. L. Hagood thereafter lived until the 3d day of October, 1912. It thus appears that R. L. Hagood lived some ten years after the execution of his will and some three years after the death of his brother, J. O. Hagood; and, if it be conceded that at the time of the execution of the will R. L. Hagood then had the specific purpose of excluding the unnamed appellees in this case, it is not unreasonable to suppose that the original purpose had been qualified, particularly in view of a knowledge of the law that must be imputed to him and his failure to make any change in his will.

[10] It is urged that, inasmuch as appellant in his answer substantially alleged the same facts, circumstances, and intent in making the will under consideration as are contained in the agreed statement upon which the case was tried, and inasmuch as there was no special denial of the facts alleged, they must be taken as confessed under the operation of the act approved March 3, 1913 (Acts 33d Leg. c. 127). This act, among other things, provided, in substance, that every

allegation or fact relied upon as a cause of action or defense by either a plaintiff or defendant should be verified by affidavit, and that, in the absence of a verified denial of the facts so alleged, they should be considered as confessed. The trial in this case proceeded as if all issues had been properly joined, and no request was made of the trial court that the whole, or any part, of appellant's answer should be taken as "confessed"; and, even during the continuance of the operation of the act referred to, it was several times held that under such circumstances the designated provision of the act was waived. See G. H. & S. A. Ry. Co. v. Pennington, 166 S. W. 465; T. & P. Ry. Co. v. Tomlinson, 169 S. W. 217. Moreover, the act of 1913 referred to was repealed in the particular under consideration by act of March 22, 1915 See General Laws 1915, p. 155. The statute of 1913, relating, as it does in the respect now relied upon, to a mere matter of procedure, is, because of its repeal, no longer available even on appeal. See Etter v. M. P. Ry. Co., 2 Willson, Civ. Cas. Ct. App. § 60, and authorities therein cited. See, also, 36 Cyc. p. 1228, par. G.

Except as embodied in the agreed statement, appellees offered no objection to the admission of evidence or to the consideration of the court, and it was suggested upon the oral submission that, because of this fact and because of a recitation in the court's judgment, we should consider the conversations and expressed intent of the testator made at the time of the execution of the will. The recitation in the court's judgment referred to is that: "The court, after hearing the issues of law discussed by counsel for both sides and having considered the facts as agreed upon by the parties, and filed in the cause," etc. We think it evident, however, that appellees at all times vigorously protested that the conversations, etc., immediately preceding the execution of the will were incompetent, and that the court in considering the agreed facts evidently coincided with appellees' contention in this respect; otherwise he would not, as was done, have followed the recitation with the conclusion "that the devise and bequest contained in the will of R. L. Hagood, deceased, in favor of J. O. Hagood, one of the beneficiaries in said will, lapsed and became void by reason of the death of J. O. Hagood before the death of the testator R. L. Hagood, and that the property devised and bequeathed to J. O. Hagood by said will became a part of the estate of R. L. Hagood until the death of R. L. Hagood and descended and vested in the heirs of said R. L. Hagood." The conclusion so stated cannot be reconciled with the view that the trial court in his determination gave effect to the agreement that R. L. Hagood's intention at the time of the execution of his will was that the survivor of the beneficiaries named should take the entire property.

[11-13] It has been suggested that we may look to the conversations and agreed intent referred to for the purpose of determining whether it was R. L. Hagood's intention in naming the brothers R. B. Hagood and J. O. Hagood to constitute a class; the suggestion embodying the idea that the will in this respect is ambiguous. But we think the suggestion ingenious rather than sound. It is true that to the general rule stated in the beginning of this opinion, that parol proof will not be received to alter the terms of a will, an exception is made in cases where there is an ambiguity or uncertainty, either in the terms used in the writing itself, or because of the existence of some extraneous fact. But to adopt the suggestion would be, we think, to do but indirectly what must be conceded cannot be done directly. In the case before us we think there is no ambiguity. The will upon its face, as it seems to us, is plain and simple, and it is none the less so, as we think, because of any extraneous fact appearing in the agreement. In the law the will speaks from the death of the testator, not as of the date of its execution, and, as before indicated, we think the trial court gave a construction to the will by no means necessarily in conflict with the intent in the mind of the testator at the time of his death.

Appellant's appeal is based on purely technical rules of construction that we do not feel impelled to apply. No natural right or equity of appellant has been invaded. By virtue of his brothers' wills and of the judgment below appellant becomes invested with one-half of the estate of J. O. Hagood as it existed at the time of his death, and one-half of the estate of R. L. Hagood, augmented as it was with one-half of J. O. Hagood's estate that went to R. L. Hagood by the terms of J. O. Hagood's will. Appellant also was awarded a one-third interest in that part of R. L. Hagood's estate that lapsed and descended to his heirs generally. Appellant was also allowed to recover the just proportion of the expenses of R. L. Hagood's last sickness and death that of right should be borne by appellees, so that on the whole we find no reason, technical or otherwise, for disturbing the trial court's judgment. All assignments of error are accordingly overruled, and the judgment affirmed.

DUNKLIN, J., dissenting.