### FARRELL v. COGLEY et al. †

(Court of Civil Appeals of Texas. San Antonio. March 20, 1912. Rehearing Denied April 10, 1912.)

1. RELEASE (§ 13*)—CONSIDERATION.

A release by an alleged beneficiary under a will to the executors, procured by payment of money by the executors of the estate, was no obstacle to the alleged beneficiary's recovery of any interest under the will to which she was legally entitled.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 21-27, 29; Dec. Dig. § 13.*]

2. LIMITATION OF ACTIONS (§ 102*)—EXISTENCE OF TRUST.

Executors sued by a legatee for an accounting, and to recover plaintiff's distributive share, cannot invoke the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494-505; Dec. Dig. § 102.*]

3. WILLS (§ 506*)—"DESCENDANT"—HEIRS AT LAW.

Where testator directed that the residue of his estate, under certain circumstances, should be distributed to his heirs at law, according to the laws of descent and distribution, and he left surviving him his brother as his sole heir, and the brother died, leaving a widow, the brother's children, but not the widow, would be descendants of the brother, and hence the widow was not entitled to take as an heir at law of the testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1090-1099; Dec. Dig. § 506.*]

4. WILLS (§ 630*)—CONSTRUCTION—VESTED ESTATE.

Testator bequeathed the residue of his estate to his executors in trust for his brother to pay to him the net revenues monthly, and, after five years, to convey the remainder to the brother in fee, if, in the executors' opinion, he should then be capable of managing the property prudently, of which the executors should be the sole judges; that, in case of the brother's marriage, he should have the right to occupy certain premises free of rent, and, at his death, before a delivery of the property to him, a part of the estate should be given to the pastors of certain churches, and the balance held subject to the order of testator's heirs at law, according to the laws of descent and distribution. Held that, testator's brother having died before the property was delivered to him, he did not take a vested estate therein; and hence, though he was testator's sole heir at law, and left neither father or mother, brother or sister, nor other descendants surviving, his widow acquired no interest in the property, under Sayles' Ann. Civ. St. 1897, art. 1689. The descent having been cast on the brother, the testator's heirs at law, on the brother's death, should be determined through him.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464-1480, 1486, 1487; Dec. Dig. § 630.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

**5. WILLS (§ 564*)—OCCUPANCY OF LAND—EXTENT OF RIGHT.**

Where testator provided in his will that in the event of the marriage of his brother, to whom he gave an executory devise, the brother should, if he desired, be permitted by the executors to occupy a certain place "so long as he shall desire to occupy the same," the brother having died before the property of the estate devised for his benefit had vested in him, the right to occupy the place mentioned terminated, and did not survive to his widow.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1228–1232; Dec. Dig. § 564.*]

**6. WILLS (§ 629*)—VESTING OF ESTATE.**

The law favors an early vesting of a future estate created by will, but not where the evident purpose of the testator is that it shall not so vest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1461, 1462; Dec. Dig. § 629.*]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Petra C. Farrell against M. T. Cogley and others to construe will. Judgment for defendants, and plaintiff appeals. Affirmed.

Dannelley & Threadgill, of Laredo, and N. A. Rector, of Austin, for appellant. E. A. Atlee, of Laredo, and Wm. Aubrey, of San Antonio, for appellees.

JAMES, C. J. The petition of Petra C. Farrell alleged: That Thos. F. Farrell, who died about June 19, 1900, left a will appointing M. T. Cogley and Albert Urbahn executors without bond or control of the probate court, and that they filed an inventory of his property and duly qualified. That item 6 of the will reads: "I give, devise and bequeath to my said executors, M. T. Cogley and Albert Urbahn, all the rest and residue of my estate real, personal and mixed, of every kind and nature, to have and to hold and to manage and control and dispose of same in trust and for the use and benefit of my brother, John W. Farrell, in the manner following, namely: (3) I direct that my said executors pay over to my said brother, John W. Farrell, monthly the net revenues of my estate derived from rents and interest, after deducting therefrom insurance, cost of repair and other expenses, including the usual commission." That item 7 reads: "At any time after five years after the date of my decease my executors are hereby authorized to convey and deliver to my said brother, Jno. W. Farrell, in fee simple all property and assets then in their hands, or under their control belonging to my estate; provided that in their opinion the said John W. Farrell shall then be capable of managing the same prudently and that it will then be to his interest to have control of the same, of which facts my said executors shall be the sole judges." That item 9 provides that in case of the death of said John W. Farrell within five years after testator's decease, or at any time thereafter, and before the said executors had conveyed and delivered to him

the property and assets of said estate that they should then dispose of said property and assets, and should make to certain churches and pastors therein named certain donations in money, and invest a certain sum so that the interest on the same shall keep in repair the family burial lot of the testator, the graves of his mother, sister, and brother, and that of himself, and thereafter, in subsection 5, further provides that they should "hold the rest and residue of my estate subject to the order of my heirs at law according to the laws of descent and distribution of the State of Texas, and continue to manage the same until such heirs shall request delivery and conveyance to them." That said executors have paid off and discharged the legacies provided for in said will, and have converted into money the major portion of the real estate, which they had full power to do, and have now in their possession belonging to said estate certain described real property, together with cash and securities, the exact amount of which is unknown to petitioner, but alleged to amount in the aggregate to $50,000, and that a more definite description of which would be furnished the court by an amended petition to be filed. That petitioner was married to said John W. Farrell on September 24, 1897. That said John W. Farrell died, to wit, on July 21, 1903, without issue, and left surviving him, as his sole heir, your petitioner, leaving surviving him no blood relations, and under the terms of said will petitioner became and is now entitled to all of the assets of the estate of Thos. F. Farrell now in the hands of defendants, who hold the same as executors under said will. That petitioner has demanded of defendants the possession of said property, but they have failed and refused to deliver to her any portion thereof, except the sum of $750, which they paid to her on or about August 29, 1903. The prayer is that she have judgment for the title and possession of all of said property, for costs, and general relief.

The answer consists of a general demurrer; a special demurrer to the petition in so far as it attempts to assert a cause of action against defendants in their individual capacity; a general denial; a plea that on August 29, 1903, plaintiff, for a valuable consideration, executed to defendants a release whereby she conveyed to defendants all her right, title, and interest in and to the estate of Thos. F. Farrell, and renounced every claim thereto, and a plea of the statute of limitations of four years.

Upon these pleadings the case proceeded to trial, no action being had on the demurrers, and the court rendered judgment that plaintiff take nothing by her suit.

The statement of facts shows that it was agreed by both parties that the court should determine whether or not plaintiff was entitled to recover under the provisions of the

will, and that the question as to how much or what she should recover, should be left open for future accounting. It was also agreed that Thos. F. Farrell died on May 14, 1900; that his will was duly probated in Webb county, and that the executors qualified and filed inventory of the property which showed value of the property to be $28,941.15, and that the executors have since had control and possession of the estate; that John W. Farrell married plaintiff on September 14, 1897, in Caldwell county, and they lived together as husband and wife in that county until his death on July 21, 1903, and that he died intestate, leaving no children surviving him and leaving plaintiff as his only heir, and that it appeared to the court that, before the death of Thos. F. Farrell, his father and mother had died, and that he left no brother or sister, nor their descendants surviving him, except his brother, John W. Farrell.

The will, after various bequests, reads:

"Item 6. I give, devise and bequeath to my said executors, M. T. Cogley and Albert Urbahn, all the rest and residue of my estate, real, personal and mixed, of every kind and nature, to have and to hold and to manage and control and dispose of the same in trust for the use and benefit of my brother, John W. Farrell, in the manner following, viz.:

"(1) I desire my executors to sell the remaining goats belonging to my estate after delivering to Geronimo Cruz the seven hundred head mentioned in Item 4 hereof, and also to sell any and all other live stock belonging to my estate, and to rent out the ranch lands until such time as said lands may be sold or otherwise disposed of as hereinafter provided.

"(2) My executors are hereby authorized to sell the ranch lands and any other real or personal property belonging to my estate whenever they shall deem it to the best interests of the estate to make such sale or sales, with full authority to execute and deliver good and sufficient deeds of conveyance of any and all such property, and to loan out the proceeds of such sales as well as any other money on hand not herein otherwise disposed of, at interest upon good real estate security.

"(3) I direct that my said executors pay over to my said brother, John W. Farrell, monthly, the net revenues of my estate derived from rents and interest, after deducting taxes, insurance, cost of repairs and other expenses including the usual commissions.

"Item 7. At any time after five years after the date of my decease my executors are hereby authorized to convey and deliver to my brother, John W. Farrell, in fee simple all property and assets then in their hands or under their control belonging to my estate; provided that in their opinion the said John W. Farrell shall then be capable of managing the same prudently and that it will then be to his interest to have control of the same, of which facts my said executors shall be the sole judges.

"Item 8. In case of the marriage of my said brother, John W. Farrell, at any time while my said executors are in charge of my estate, and he desires to occupy lots Six (6) and Seven (7) in Block Sixty-two (62) and the improvements thereon, in the Western Division of the said City of Laredo, as his place of residence, and the same shall not have been previously sold, shall permit him to so occupy the same free of rent or other charges or expenses so long as he shall desire to occupy the same.

"Item 9. In case of the death of my said brother, John W. Farrell, within five years after my decease, or at any time thereafter and before the conveyance and delivery to him of the property and assets of my estate by said executors, it is then my will and I hereby direct that my said executors shall then dispose of said property and assets as follows:" Then follow several provisions for payment of certain sums to pastors of churches and a sum to be invested for the care of a cemetery lot, after which comes this item: "Hold the rest and residue of my estate subject to the order of my heirs at law according to the laws of descent and distribution of the State of Texas, and continue to manage the same until my heirs shall request delivery and conveyance to them."

Defendants introduced the following instrument of release: "The State of Texas, County of Webb. Whereas Thomas F. Farrell, late of Webb county, Texas, died on or about the 14th day of May, 1900, leaving an estate of about the value of twenty-nine thousand dollars and leaving a will which has been duly admitted to probate in the county court of Webb county, Texas, by the terms of which last will the principal part of said estate was left to M. T. Cogley and Albert Urbahn, in trust for the benefit of his brother, John W. Farrell, under certain conditions therein provided. And whereas the said Thomas F. Farrell had never been married, and at the time of his death he had no father, mother, sister nor brothers, nor their descendants surviving him, except his brother, the said John W. Farrell. And whereas the said John W. Farrell died without issue on or about the 21st day of July, 1903, leaving his wife, the undersigned, Petra C. Farrell, surviving him, the said executors having remained and still remaining in possession and control of the assets of said estate and having paid over to said John W. Farrell only the net revenue or income thereof in accordance with the terms of said will. And whereas the said executors believe, claim, and contend that the said Petra C. Farrell, widow of John W. Farrell, has no right, title, interest, or claim in or to any part of the property of said estate: Yet, in view of the re-

lationship which existed between her and the said John W. Farrell, and her claim and belief that she has an interest in the said estate, and in order to avoid the expenses which would be involved in any litigation with her regarding the said estate or any claim she might urge thereto, they are willing to give her, and she is willing to accept the sum of seven hundred and fifty 00/100 dollars in full settlement, discharge and acquittance of any and all rights, claim or demand which she has or may have in and to the property of the said estate of Thomas F. Farrell, deceased, or any part thereof: Therefore, know all men by these presents that I, the said Petra C. Farrell, widow of John W. Farrell, deceased, in consideration of the premises aforesaid, and of the said sum of seven hundred and fifty and 00/100 dollars to me in hand paid by M. T. Cogley and Albert Urbahn, executors as aforesaid of the will and estate of Thomas F. Farrell, deceased, the receipt of which is hereby acknowledged, do hereby grant, sell, and convey, remise, release, and quitclaim unto the said M. T. Cogley and Albert Urbahn, as such executors, all my right, title, interest, claim, and demand in and to any and all the property, real, personal and mixed, belonging to, or held or claimed as belonging to the said estate of Thomas F. Farrell, deceased. To have and to hold the same for the uses and purposes set forth in said will, unto them, the said M. T. Cogley and Albert Urbahn, executors as aforesaid, their successors and assigns forever, hereby renouncing any and every claim thereto. Witness my hand at Laredo, Texas, this 29th day of August, 1903. [Signed] Petra C. Farrell." The consideration for said release was $750 paid out of the funds of the estate.

[1, 2] The foregoing release or renunciation to the executors procured by money of the estate was no obstacle to the recovery by plaintiff, if, in fact, she was legally entitled to the estate under the terms of the will. And we hold, also, that the statute of limitations could not be invoked by the executors.

The question upon which the case depends is whether or not plaintiff became entitled to the property of the estate under the testator's disposition made of it by the will to "my heirs at law according to the laws of descent and distribution of the State of Texas." The conclusion to which we have come is that, considering the whole will, the testator intended that the future or residuary estate in his property, subject to the minor bequests and provisions, should be conveyed by his executors to the living persons who at the death of his brother answered the description of his, the testator's, heirs at law, as ascertained by the statutes of descent and distribution of this state. The only theory which would justify the position that the widow of the brother should take the future or residuary estate is that such estate had vested in the brother.

[3] Under our statute of descent and distribution, the persons who would take as heirs at law of the testator would have been the brother, who admittedly was his sole heir when he died, and the brother's descendants, if any, and the brother's widow would not be a descendant. The brother's children would be descendants, but not the widow.

[4] The widow, however, would, under article 1689, Sayles' Rev. St. 1897, inherit from the brother any estate of inheritance that he had at the time of his death, the brother having neither surviving father nor mother, brother, or sister or their descendants. It follows that, if the residuary estate did not vest by the terms of this will in the brother, plaintiff has no right in it. The question at issue depends, therefore, on whether or not the right to said residue was a vested estate in the brother. We think the will vested no interest in the corpus of the property in the brother. There are no words of present gift to the brother of the property, nor to the testator's heirs at law. On the contrary, the express disposition made by the will was to withhold everything, and every interest in the property itself from the brother, who testator knew was his sole heir at law at that time, and provided expressly what interest he should have in reference to it during his life, which was merely the net income. The title to the property was vested in the executors with power to control and to dispose of it, with express direction after the death of the brother during the five years, or if they had not seen proper to convey it to the brother after five years during his lifetime, in the contingency of his reformation, to convey and deliver it after the brother's death to testator's heirs at law. It was plainly the intention of the testator that no interest whatever should vest in the brother during his life, except the right to the income payable monthly.

[5] There is a provision in the will that, in the event of his brother's marriage (he was married at the time the testator died, but the latter was not cognizant of the fact), the brother should, if he desired, be permitted by the executors to occupy a certain place in Laredo "so long as he shall desire to occupy the same." This, of course, was a right that was not intended to survive him. The place necessarily went with the future disposition of testator's property. The testator had no intention that even the use of this home should go to the brother's widow at the death of the latter. Taking the will and its provisions as our guide, it is apparent that no interest in the property vested in the brother in his lifetime, and consequently he had nothing in the property that passed to his widow at his death.

[6] The law favors an early vesting of a future estate created by a will, but not where the evident purpose of the testator is that it shall not so vest. This idea of early vesting has led to the rule, adopted generally, that

where a will provides that a future estate go to the testator's heirs at law, and there is nothing indicative of a different intent, that by "heirs at law" the testator referred to the class of persons that were such at the date of his death. This, supported by cases, is the rule invoked by appellant who contends that the executory devise went directly to the brother, who. was his sole heir at law, when the testator died; and that, therefore, the law of descent and distribution applicable to the brother's estate should control this case. This is in another form the contention that the executory devise vested in the brother, which, in our opinion, was not the case under this will, the testator having plainly indicated the intention that the vesting should not occur until after the brother's death. We think, however, that in determining who are the testator's heirs at law to whom the executors shall convey the property we must ascertain upon whom the statute cast descent at his death, which we find was the brother, and then ascertain, through the brother, who, after his death, would be the testator's heirs at law, not the brother's.

The brother's children would have been such, but not his widow.

The judgment is affirmed.