## Anderson Estate.

354

Argued April 18, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Hamilton A. Robinson,* with him *Dickie, Robinson & McCamey,* for appellant.

*John T. Conner,* for appellee.

OPINION BY DITHRICH, J., July 15, 1949:

This is an appeal by the widow of Charles A. Anderson, Jr., from a decree of distribution in the estate of his father, Charles A. Anderson, deceased. The father died on April 5, 1930, having first made his last will and testament dated December 30, 1929. In addition to his son he was survived by three daughters, Virginia A. Calvert, Katherine A. Gill, and Martha A. Emmal. The last named died on July 19, 1945, a widow, intestate, and

without issue. At the audit of the account of the testamentary trustees following her death, it was decreed that her share in the trust income accrued from the rental of Loew's Penn Theater property in downtown Pittsburgh should be paid to the three surviving children. No appeal was taken from that decree. The same question, decided in the same manner by the same divided court, TRIMBLE, P. J., and BOYLE, J., concurring, with COX, J., dissenting, following the death of Charles A. Anderson, Jr., gives rise to this appeal.

The facts are not in controversy. Charles A. Anderson, Jr., died on October 20, 1947, leaving to survive him his widow, the appellant, but no children. On January 27, 1942, he executed and delivered to his wife an assignment of his share of the trust income. It is her contention that her husband had a vested right in the income from the said real estate during the existence of the trust, which interest was not divested by his death, and that she, as assignee, is entitled to his share of the income until termination of the trust.

The trustees' duty with respect to this theater property is set forth in item Fifth of the will, paragraph 4, as follows:

"To receive and pay in monthly installments *to those entitled thereto under the preceding paragraphs hereof* my share of the income from the real estate located at the southeast corner of Penn Avenue and Federal Street [now Sixth Street], in the City of Pittsburgh, now covered by a long term lease; and, in the event that the aforesaid real estate be sold under the terms of the existing lease or otherwise, I direct that my Trustees shall receive my portion of the proceeds thereof, invest the same and pay the income therefrom to those theretofore entitled to receive the rent; and the said trust shall continue until my youngest grandchild shall have arrived at the age of twenty-one years, and until the last of my aforementioned children shall have died,

when said trust shall lapse and the corpus shall be distributed to my grandchildren in the proportion they would have taken had the corpus been left to their respective parents." (Italics supplied.)

The question before the court, as stated by TRIMBLE, P. J., in his concurring opinion, "is whether, upon the death of Charles A. Anderson, Jr., his widow takes, until the time for distribution of the principal, the share which he would have taken if he had lived, or whether his share passes to his surviving sisters." Under item Fourth the testator gave and bequeathed to his children, naming them, all his personal estate, share and share alike. It further provided: "If any of my said children should not survive me, and die leaving no child or children to survive him or her, then the share of such deceased child shall be divided equally among my surviving children; if a child or children survive the parent, the parent's share shall vest in my Trustees, hereinafter named." After thus naming his children once as his pecuniary legatees, they are described throughout the will as his children. No grandchild is named. They are all treated alike by him and identified as "grandchildren". As stated by BOYLE, J.: "When this same question was before us at the audit of the trustees' first and partial account, filed after the death of Martha Emmal, one of the testator's children, President Judge TRIMBLE wrote in his opinion filed at that time: '. . . . The beneficiaries are composed of two classes, his children and his grandchildren. You can search the will from beginning to end for an expression of an intention to give any part of his estate to any person other than his children and grandchildren and none can be found. His children and his grandchildren were the objects of his bounty and these two classes of legatees take his estate. On Martha's death, a widow without children and intestate, her estate was at an end. It passed under the law to her surviving sisters and brother.' " Upon

the brother's death, without children and intestate, his interest passed to his surviving sisters.

Since this is clearly a gift to a class, it comes within the rule so aptly stated by Mr. Justice DREW in *Wood's Estate,* 321 Pa. 497, 500, 501, 184 A. 13, 15, 16: "In a gift of income to a class, where a member of the class dies without issue before the time for principal distribution, the share of that member falls in and, in the absence of a contrary intent, increases the shares of the surviving members of the class, who therefore take in preference to the personal representatives of the deceased member: [citing cases]. The interest is thus one for life, with remainder to the surviving members of the class, where no different intent appears. . . . In a gift of income, distributees are to be ascertained at each periodic distribution by the formula provided by testator: Rowland's Est., supra [141 Pa. 553, 21 A. 735]; Rowland's Est., 151 Pa. 25 [24 A. 1091]."

In *Huddy's Estate,* 63 Pa. Superior Ct. 34, affirmed in 257 Pa. 528, 101 A. 818, this Court said, at pages 39, 40, in an opinion by KEPHART, J., later Mr. Chief Justice KEPHART: "These are the persons for whose benefit the property is set apart and the purpose of the testator is apparent to so control its destination as to result in their benefit and advantage exclusively. The other view of the case diverts it to strangers and subjects it to possible liability for the debts of those who are alien to the testator's blood and strangers to his bounty. If the distributees are treated as two classes, . . . as was done in Rowland's Estate no question of survivorship arises nor is there an intestacy."

Appellant relies almost solely on the rule in *Rickenbach Estate,* 348 Pa. 121, 34 A. 2d 527, and contends that under the first three paragraphs of item Fifth the rule there enunciated is controlling. The will, however, must be read as a whole. Hunter's Pennsylvania Orphans' Court Commonplace Book, Vol. II, Title "Wills", sub-

section 2 (c). When thus read there are several distinguishing features between the will in the *Rickenbach* estate and the will in this estate. In the *Rickenbach* case a trust was created for the sole purpose of preserving assets of the estate and its duration was limited to the time when the trust property could be sold advantageously. It is what is commonly termed a "pay and divide" case. As stated in the concurring opinion by TRIMBLE, P. J., who wrote the opinion for the lower court in the *Rickenbach* case, the decree being affirmed on appeal to the Supreme Court: "There are a number of provisions in the Rickenbach estate which distinguish this case from it. There the testatrix had two daughters who were unmistakably preferred. The effort was to disinherit one of them, which could not be done because the testatrix, after expressing her intention that they should have the property, said that if anything in the will should prevent this, title should vest absolutely in them, and the Supreme Court held that it did. In this case strangers to testator's blood claim against his nominated legatees, his children and his grandchildren. Every person else is clearly ignored and his intention should not be set aside by presumptions."

From a reading of the whole will we are of opinion that it was clearly the intent of the testator to create a definite trust for the purpose, not of preserving the assets as in the *Rickenbach* case, but of providing an income for life for his children and for his grandchildren, and upon the death of the last surviving child and the arrival of the youngest grandchild at the age of twenty-one years, the trust was to terminate and the corpus was to be distributed per stirpes to the grandchildren. Since appellant's husband had only a life estate in the trust income, he could not make a valid assignment beyond his lifetime.

Decree affirmed. Costs to be paid by appellant.