

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00035-CV

Carol **OCHSE** and William W. Ochse, III, individually and as trustee of the William W. Ochse III Family 2008 Trust,
Appellants

v.

Cynthia Cadwallader **OCHSE**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-00062
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 18, 2020

AFFIRMED

In this appeal, we must interpret the word "spouse" in a trust instrument. The grantor of the trust named her son's "spouse" as a beneficiary. The parties dispute whether the term "spouse" identifies only the son's first wife, his wife at the time the trust was executed, or whether it includes the son's second wife, to whom the son is now married. Because we construct the language of the trust to unambiguously reflect the grantor's intent to identify her son's then-"spouse" as a beneficiary to benefit from the trust at the time the trust was executed, we affirm the trial court's summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 6, 2008, Amanda Hurst Ochse created an irrevocable trust titled the "William W. Ochse III Family 2008 Trust." At the time the Trust was created, Amanda was unmarried, and William W. Ochse III was her only living son. William was married to Cynthia Cadwallader Ochse, and together they had a daughter, Chloe Ochse Seiler and a son, William Ochse IV.

The pertinent language of the Trust provides the following:

1.1 <u>Initial Trust Property.</u> The Grantor, desiring to establish a trust *for the benefit of her son, her son's descendants, and her son's spouse,* has simultaneously with the execution of this trust agreement, delivered to the Trustee those assets described on Exhibit "A" attached hereto . . . .

2.1 <u>Right of Withdrawal.</u> Unless the donor of property to a trust established herein specifically notifies the Trustee to the contrary at the time of such contribution, any contribution to such trust (including the original contribution by the Grantor) *shall be subject to a right of withdrawal by each member of the class composed of the primary beneficiary of such trust, the then living descendants of such primary beneficiary and the spouse of such primary beneficiary. . . .*

3.1 . . . . A. <u>Distributions of Income and Principal.</u> *The Trustee is authorized and directed to distribute to or for the benefit of the primary beneficiary, the primary beneficiary's descendants and the primary beneficiary's spouse,* out of the income, and if income is insufficient, out of the principal of such trust *from time to time* such sums as are reasonably needed for their health, including medical, dental, hospital, and nursing expenses, and expenses of invalidism, and such sums as are reasonably needed for their education, maintenance and support in their accustomed manner of living. . . .

B. <u>Non-General Inter Vivos Power of Appointment.</u> *The primary beneficiary shall have the power, at any time and from time to time (by specific reference to this power in an instrument in writing executed by him), to appoint all or a part of the corpus of the trust to or for the benefit of any one or more of the class composed of the Grantor's descendants (other than the primary beneficiary himself) and the primary beneficiary's spouse, in such proportions and subject to such terms, trusts and conditions as the primary beneficiary may direct . . . .*

C. <u>Testamentary Power of Appointment.</u> *The primary beneficiary shall have the power exercisable alone, at any time and in all events (by specific reference to this power in his will), to appoint all or any part of the corpus of this trust to or for the benefit of any one or more of the class composed of the Grantor's descendants (other than the primary beneficiary himself) and the primary beneficiary's spouse,*

*in such proportions and subject to such terms, trusts and conditions as the primary beneficiary may direct in his will . . . .*

5.1 <u>Trustee of Trust for William W. Ochse III and William W. Ochse III's Descendants.</u> The initial trustee of the trust administered under the provisions of Paragraph 3.1 hereof shall be William W. Ochse III. *If he ceases or fails to serve as trustee, the Grantor appoints Cynthia Cadwallader Ochse and Jack C. Hebdon, Jr., successively and not jointly, as successor trustee.*

5.2 <u>Trustee of Trusts for Descendants of William W. Ochse III.</u> *In connection with each of the trusts administered under the provisions of Paragraph 3.2 hereof, the initial trustee of each such trust shall be Cynthia Cadwallader Ochse and Jack C. Hebdon, Jr.;* provided, however, that each of the Grantor's descendants who is a beneficiary of each such trust and who has the legal capacity to act shall serve as sole trustee of his or her own trust upon attaining the age of thirty-five years. The beneficiary shall assume the duties of trustee upon giving written notification to the then serving trustee, who shall at that time resign. . . .

5.3 <u>Appointment of Trustees.</u> . . . . Subject to such trustee's powers described herein, if the situation ever arises where a trust is without a trustee, the appointment of a successor trustee shall be determined by the foregoing provisions of this article, and if the provisions of this article do not provide for a successor trustee*, then Cynthia Cadwallader Ochse and Jack C. Hebdon, Jr., shall serve, successively and not jointly, as successor trustee. . . .*

Any provisions of law to the contrary notwithstanding, the Trustee shall have full power and authority to buy, sell, or lease any trust property, or to loan or borrow money at any time and in any amount from time to time for the benefit of the trust estate or estates, to or from any person, trust, estate, firm, or corporation, *including any adult beneficiary of any trust estate, and including any trust or trust estates created by the Grantor during her lifetime, or created by the Grantor's husband during his lifetime or by his Will, and including the testamentary estate of the Grantor's husband . . . .*

The Trustee is authorized and empowered to continue to own, operate and/or invest in any closely-held business and/or corporation and/or partnership and/or joint venture owned by the Grantor or in which the Grantor may own an interest at the time of her death, and to do any and all things deemed necessary by the Trustee, including the right to become or remain a partner or shareholder in such business, corporation, partnership or joint venture, or to incorporate such business, partnership or joint venture, or put in additional capital, for such length of time as the Trustee shall deem advisable, and to close out and liquidate or sell such business, corporation, partnership or joint venture interest, or any subsidiary or other affiliate thereof, upon such terms as the Trustee shall deem best. *The Grantor recognizes that the Grantor's husband and the Grantor may own any such business, corporation, partnership, or joint venture as community property at the time of the Grantor's death* or that any other individual Trustee may own an interest in any

such business, corporation, partnership or joint venture at the time of the Grantor's death, and therefore, each Trustee is authorized and empowered to deal with himself or herself, in his or her individual capacity, in connection with such business, corporation, partnership or joint venture to the same extent as if he or she were an unrelated shareholder, partner or joint venturer.

(emphases added).

In 2012, William and Cynthia Ochse divorced after a marriage of approximately thirty years. In 2015, William married Carol Ochse. In March 2018, William's children brought suit against him, individually and as trustee of the Trust, seeking his removal as trustee due to allegations that he breached his fiduciary duties and obligations. The children also named Cynthia as an interested person in the case due to her status as a beneficiary of the Trust. In 2018, Cynthia filed an original answer to the children's petition and filed a crossclaim against William. Cynthia then sought a declaration that the terms "primary beneficiary's spouse" and "son's spouse" in the Trust solely referred to her because she was William's spouse at the time the Trust was executed. Carol intervened and sought a declaration that the terms "primary beneficiary's spouse" and "son's spouse" applied to her from the date of her marriage to William in September 2015 to present.

Carol and Cynthia filed competing motions for partial summary judgment for a judicial declaration regarding the meanings of the terms "spouse," "son's spouse," and "primary beneficiary's spouse." Cynthia also argued that her interests in the Trust are her sole and separate property. The trial court granted Cynthia's motion and denied Carol's motion. In its order, the trial court found:

> The terms "spouse," "primary beneficiary's spouse," and "son's spouse" referenced in the Trust Agreement Establishing the William W. Ochse III Family 2008 Trust are unambiguous and specifically mean Cynthia Cadwallader Ochse, to whom William W. Ochse, III, was married at the time the trust instrument was established and does not mean any subsequent spouse of William W. Ochse, III, including but not limited to Carol Dicker Ochse.

The claims involved in the declaratory actions were severed from the remaining claims, and Carol and William appealed the trial court's determination that Carol is not a beneficiary of the Trust.

### TRUST CONSTRUCTION

*A.  Standard of Review*

We review a declaratory judgment under the same standards as other judgments and decrees.  TEX. CIV. PRAC. & REM. CODE ANN. § 37.010.  When both parties move for summary judgment and the trial court grants one motion and not the other, we review both parties' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002).

A party moving for traditional summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  Here, both motions sought summary judgment based on a question of law.  *See Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied) (explaining that the construction of a trust instrument is a question of law for the trial court); *Hurley v. Moody Nat'l Bank*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (same).  Our standard of review is *de novo.  See In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 116 (Tex. App.—San Antonio 2008, pet. denied).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.  *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### B.  Applicable Law

The same rules of construction apply to both wills and trusts.  *See In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 117.  In interpreting a will or a trust, we ascertain the intent of the testator or grantor.  *See Eckels*, 111 S.W.3d at 694; *Hurley*, 98 S.W.3d at 310.  We do so from the language used within the four corners of the instrument.  *See Eckels*, 111 S.W.3d at 694; *see also Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016) (applying four-corners rule to construe a will).  We harmonize all provisions and construe the instrument to give effect to all provisions so that no provision is rendered meaningless.  *Eckels*, 111 S.W.3d at 694.  When, as here, the language is unambiguous and expresses the grantor's intent, we need not construe the instrument because it speaks for itself.  *Id.*  Thus, we do not focus on what the grantor intended to write but the meaning of the words she actually used.  *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *see Hysaw*, 483 S.W.3d at 7.  That is, we must not redraft a trust instrument to vary or add provisions "under the guise of construction of the language" of the trust to reach a presumed intent.  *Lang*, 35 S.W.3d at 639.

### C.  Determining the Grantor's Intent

Using the above rules of construction, we must determine Amanda's intent, in 2008, when she executed the Trust for the benefit of her son's "spouse."  At the time the Trust was executed, Amanda's son was married to Cynthia and had been married to her for approximately thirty years.  Both parties agree that, at the time the Trust was executed, the term "spouse" unambiguously referred to Cynthia.  However, the parties offer conflicting constructions of the term; Carol and William Ochse interpret the term to mean Cynthia at the time the Trust was executed *and* to later mean Carol upon her marriage to William, while Cynthia interprets the term to refer solely to her.

Carol and William argue that Amanda's use of Cynthia's name in the Trust and her failure to specifically name Cynthia when referring to her son's "spouse" indicate the grantor's intent for

the term "spouse" to be descriptive of a status rather than a particular individual. Carol and William point to sections 5.1, 5.2 and 5.3 of the Trust, in which Amanda specifically labels Cynthia only as a successor trustee. We are not persuaded by this argument. The significance of using Cynthia's name throughout the Trust demonstrates Amanda's overarching intent to benefit Cynthia. *See Parrish v. Mills*, 106 S.W. 882, 886 (Tex. 1908) (looking to an entire instrument when ascertaining the grantor's intent); *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 118. The Trust similarly refers to William by name when establishing him as the trustee, but then refers to him as Amanda's "son" in Section 1.1 when establishing the beneficiaries of the Trust.

Carol and William also point to instances in the Trust, such as Section 2.1, in which the term "class" is used to describe beneficiaries and to Sections 3.1(B) and (C), by which Amanda gave William an *inter vivos* power of appointment "at any time and from time to time" and a testamentary power of appointment giving him that right "at any time and in all events . . ." Carol and William argue Amanda intentionally used this language because she intended that changed circumstances could alter beneficiaries. They further argue that Cynthia lost her status as "spouse" upon her divorce from William in 2012 and that Carol gained that status when William married her in 2015.

Cynthia responds that in the absence of an expression of contrary intent, a gift to a "spouse" of a married person must be construed to mean the spouse at the time of the execution of the instrument and not a future spouse. Thus, Cynthia contends that the terms "primary beneficiary's spouse" and "son's spouse" in the Trust solely referred to her because she was William's spouse at the time the Trust was executed. We agree. *Cf. Lang*, 35 S.W.3d at 639 ("[A] court may *always* receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time" (citing *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971))). Carol and

William's interpretation would ask this Court to view "spouse" as a status or class gift. This interpretation is inconsistent with Texas precedent regarding the use of classes in trust instruments and wills and, further, fails to harmonize all provisions of the irrevocable Trust before us. *See Eckels*, 111 S.W.3d at 694 (stating that courts must construe a trust instrument to give effect to all provisions so that no provision is rendered meaningless). A class gift is defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift. *See Wilkes v. Wilkes*, 488 S.W.2d 398, 403 (Tex. 1972) (holding that a gift to "lineal descendants" was a gift to a class because the maker intended the group to be capable of future changes in number and was intended for individuals she did not know and could not name, rather than a bequest to specific individuals). Here, it was possible to identify a specific "spouse" at the time the Trust was executed in 2008. *Cf. id.* (providing examples of class gifts, such as gifts to "children," "grandchildren," "brothers," "sisters," "nephews," "nieces," "cousins," "issue," "descendants," or "family."). In contrast, there is no evidence Amanda intended the term "spouse" to encompass a body of persons uncertain in number at the time of the gift. *See id.*

Therefore, we hold that the grantor's use of the term "spouse" referred to William's spouse at the time the Trust was executed, and did not refer to a class of persons including future spouses. *See In re Ray Ellison Grandchildren Trust*, 261 S.W.3d at 117 (interpreting the term "descendants" in a trust to exclude individuals who later came to fit the description after execution of the trust). We disagree that the grantor's use of the term "husband" in sections 6.3 and 6.4 of the Trust, when Amanda was not married, evidences her intent for the term "spouse" to likewise be a status that could later be filled by other persons. Unlike a potential "husband," the term "spouse" could identify only one specific individual at the time the Trust was executed. We decline to redraft the Trust to reach a presumed intent to benefit a potential replacement "spouse." *See Lang*, 35 S.W.3d at 639 (stating that courts must not redraft a trust instrument to vary or add provisions to reach a

presumed intent); *Frost Nat'l Bank v. Newton*, 554 S.W.2d 149, 153 (Tex. 1977) ("No speculation or conjecture regarding the intent of the testatrix is permissible where, as here, the will is unambiguous, and we must construe the will based on the express language used therein.").

## CONCLUSION

Applying the four-corners rule, we hold the trust grantor Amanda's unambiguous intent was to benefit her son's then-spouse Cynthia at the time the Trust was executed, not to include any subsequent spouse.[1]  Because the trial court did not err in so concluding, we affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

---

[1] Despite our interpretation of the Trust in Cynthia's favor, we disagree with her argument that because the Trust is irrevocable, her rights as a beneficiary vested upon the Trust's effective date in 2008.  The principle of irrevocability is inapposite.  An irrevocable trust simply means a trust whose terms cannot be changed by the settlor once the property is conveyed to the trust.  *See Lee v. Rogers Agency*, 517 S.W.3d 137, 149 (Tex. App.—Texarkana 2016, pet. denied).